IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STANLEY RALPH MONROE, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 23-854 |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) |

**O R D E R**

AND NOW, this 18th day of September, 2024, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on November 20 2023,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on October 23, 2023,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.     Background**

Plaintiff Stanley Ralph Monroe, Jr., protectively filed a claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and a claim for supplemental security income benefits under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et seq.*, effective June 7, 2021, claiming that he became disabled on April 1, 2021 due to atrial fibrillation, congestive heart failure, and sleep apnea.  (R. 23, 188-99, 208).  After being denied

initially on October 12, 2021, and upon reconsideration on January 14, 2022, Plaintiff sought, and obtained, a telephonic hearing before an Administrative Law Judge ("ALJ") on July 12, 2022.  (R. 23, 108-23, 127-28, 134-35, 42-57).  In a decision dated September 8, 2022, the ALJ denied Plaintiff's request for benefits.  (R. 23-33).   The Appeals Council declined to review the ALJ's decision on April 13, 2023.  (R. 1-4).  Plaintiff filed an appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.     Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).  If the district court finds this to be so, it must uphold the Commissioner's final decision.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  It

means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.*  So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06.  Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

  A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

  The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a

disability as defined by the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at §§ 404.1522, 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. §§ 404.1545(a), 416.945(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order

to deny a claim of disability. *See id.* at §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at §§ 404.1523, 416.923.

### III.    The ALJ's Decision

In his September 8, 2022 decision, the ALJ found that Plaintiff met the insured requirements of the Act through June 30, 2024. (R. 25). He then proceeded to apply the sequential evaluation process, finding that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date of April 1, 2021. (*Id.*). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had the severe impairments of atrial fibrillation, cardiomyopathy, and obesity, although he found that Plaintiff's obstructive sleep apnea and depression did not qualify as severe impairments. (R. 25-26). The ALJ concluded that none of Plaintiff's impairments met any of the listings that would satisfy Step Three, specifically considering Listings 4.02 for heart failure and 4.05 for cardiac arrythmias. (R. 26).

The ALJ found that Plaintiff retained the RFC to perform sedentary work with a number of non-exertional limitations, including postural, environmental, climbing-related, and mental restrictions. (R. 27). At Step Four of the process, the ALJ used a vocational expert ("VE") to find that Plaintiff was unable to perform his past relevant work. (R. 31-32). He proceeded to determine, at Step Five, whether there were jobs in the national economy that Plaintiff could perform. (R. 32-33). The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform a significant number of jobs in the national economy, including

the representative occupations of addresser, call out operator, and patcher.  (R. 32, 55).  Accordingly, the ALJ found that Plaintiff was not disabled.  (R. 33).

**IV.     Legal Analysis**

Plaintiff argues that the ALJ erred in failing to properly analyze the evidence of cardiomyopathy under Listing 4.02, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three of the sequential analysis,[1] particularly by failing to account for records from his treating cardiologist that he had an ejection fraction that would meet Part A of the listing.  The Court agrees that, by failing to discuss this piece of evidence, the ALJ's finding that Plaintiff's condition did not meet or equal Listing 4.02 cannot be found to be supported by substantial evidence.  Therefore, it will remand this case for further consideration of this issue.[2]

As noted above, the ALJ did, in fact, consider whether Plaintiff's cardiomyopathy or congestive heart failure satisfied the criteria for Listing 4.02, finding that it did not.  This listing provides:

> **4.02** *Chronic heart failure* while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in *both A and B* are satisfied.
>
> **A.** Medically documented presence of one of the following:
>
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5

---

[1]  Plaintiff raises no issues regarding the ALJ's consideration of Listing 4.05 for recurrent arrhythmias.

[2]  Because the Court is remanding the matter on this issue, it does not reach Plaintiff's other arguments.  On remand, however, the ALJ should ensure that all medical opinions, including that of Dr. Craig Alpert, are properly assessed and that Plaintiff's obesity is properly factored into the analysis.

> cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> **B.** Resulting in one of the following:
>
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>
> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
>
> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
>
> c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>
> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

The ALJ stated that Plaintiff was noted to have left ventricular ejection fraction ("LVEF") of 14-19 percent while hospitalized for a cardiac event in April 2021 but noted that with diuresis and medication this rose to 20-25 percent in only two weeks. While acknowledging that these levels

were low enough to meet the criteria for 4.02.A.1, he concluded that Plaintiff's improvement demonstrated that such diminished levels would not be present over time during periods of stability. He therefore found that Plaintiff's condition did not meet or equal Part A of the listing. As a claimant must satisfy both Part A and Part B for the listing to apply, the ALJ did not analyze Part B. (R. 26).

Plaintiff argues, however, that this analysis was incomplete, as the ALJ failed to identify or discuss records from his treating cardiologist, Craig Alpert, M.D., that showed an LVEP of 25 percent on February 22, 2022 (R. 1002), well after the cardiac event necessitating the hospitalization ten months earlier. He asserts that this result, which was less than the 30 percent required by Listing 4.02.A.1, was obtained during a period of stability and refutes the ALJ's assumption that his ejection fraction continued to improve after he left the hospital in April of 2021. The Commissioner does not deny that the ALJ did not discuss this LVEF finding but argues that there was more than a scintilla of evidence elsewhere in the record suggesting that Plaintiff did not meet Listing 4.02, including the opinion of the consultative examiner and the prior administrative findings of the state reviewing agents, none of whom found that the listing had been met.

However, notwithstanding the Commissioner's argument, all of these opinions predate the medical evidence of an LVEF of 25 percent in February of 2022. As such, none of these medical professionals would have had access to or known that Plaintiff continued to suffer from ejection fractions of less than 30 percent well after his hospitalization. Theses opinions, therefore, do not provide a basis for an alternative finding as much as they were simply made prior to newer important evidence being available.

In any event, the ALJ did not discuss Dr. Alpert's February 22, 2022 LVEP findings at all, much less consider how they would affect the applicability of Listing 4.02.  This is especially problematic given that the ALJ acknowledged that Plaintiff had already demonstrated ejection fraction levels that would satisfy 4.02.A.1, while finding that those levels were not indicative of Plaintiff's level during a period of stability because of his relatively quick improvement with treatment.  Evidence that would tend to show little change in LVEF levels from the time Plaintiff left the hospital to ten months later is highly relevant to the validity of the ALJ's rationale.

Of course, an ALJ "need not mention every piece of evidence in the record," *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 Fed. Appx. 743, 747 (3d Cir. 2009), but in making his findings, an ALJ must consider all of the evidence and "give some indication of the evidence which [he] rejects and [his] reason(s) for discounting such evidence."  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer*, 186 F.3d at 429).   Therefore, as noted above, an ALJ may not ignore, or fail to resolve, a conflict created by countervailing evidence.  *See Morales*, 225 F.3d at 317.  The February 2022 LVEF findings were particularly relevant here, as this evidence was arguably supportive of Plaintiff's cardiomyopathy satisfying Part A of Listing 4.02.  This is especially so given that the other ejection fraction levels discussed by the ALJ were also under the level required by Listing 4.02, and indeed, it did not appear that there were any ejection fraction findings in the record that would ***not*** satisfy the listing.

The Commissioner goes on to argue that, to meet Listing 4.02, Plaintiff must satisfy both Part A and Part B and that he has failed to demonstrate how his condition meets or equals any of the subsections of Part B.  However, as discussed above, the ALJ did not base his finding that Plaintiff failed to meet a listing on a failure to satisfy Part B; he did not analyze the applicability

of that Part at all. Pursuant to the *Chenery* doctrine, "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.,* 318 U.S. 80, 87 (1943). *See also Fargnoli v. Massanari,* 247 F.3d 34, 44 n. 7 (3d Cir. 2001). The Commissioner, therefore, and not the Court, should first perform an analysis as to whether Plaintiff's conditions satisfy Part B of Listing 4.02 if needed. Accordingly, remand is necessary.[3]

## V.      Conclusion

In short, the record does not permit the Court to determine whether the ALJ's decision is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch
United States District Judge

ecf:         Counsel of record

---

[3] Because it is the need for additional explanation by the ALJ that necessitates a remand in this case, the record does not permit the Court to reverse and remand the case for an award of benefits. *See Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Indeed, the Court emphasizes that it is not in any way finding that the ALJ's findings are incapable of being found to have adequate record support.